IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | * | Docket No. CR.00-105 (PLF) |
| Plaintiff, | * | |
| v. | * | |
| BYRON LAMONT MCDADE, | * | |
| Defendant | * | |

## **SUPPLEMENTAL MEMORADUM**

Comes now Defendant, Byron McDade, by and through undersigned counsel and submits this supplemental memorandum in the instant case:

Procedural Background

The defendant was convicted of one count of conspiring to distribute and possess with intent to distribute five kilograms or more of a mixture or substance containing cocaine. The Court sentenced defendant to 324 months incarceration. The case was affirmed on appeal by the United States Court of Appeals for the District of Columbia and the United States Supreme Court denied defendant's petition for writ of certiorari on March 8, 2004.

On March 7, 2005, the defendant via counsel filed motion to vacate, set aside or correct his sentenced, pursuant to 28 § U.S.C. 2255. On April 8, 2005, undersigned counsel filed a motion for leave to file an amended motion to vacate, set aside or correct his sentenced, pursuant to 28 § U.S.C. 2255. On or about April 26 2005, the court granted said motion to file an amended motion to vacate, set aside or correct his sentenced pursuant to 28 § U.S.C. 2255.

On January 15, 2008, the Court conducted an evidentiary hearing to address defendant's amended motion pursuant to 28 U.S.C. § 2255.

## Issues Presented

A) Whether the defendant's amended petition on the issue of whether trial counsel was ineffective should be dismissed as untimely?
B) Whether trial counsel was ineffective?
C) Whether the court has authority to re-sentence defendant?

## A. Whether the Defendant's Amended Motion to Vacate, Set Aside or Correct His Sentence on the Issue of Whether Trial Counsel Was Ineffective Should Be Dismissed As Untimely

There is no dispute that a timely motion to vacate, set aside or correct his sentenced, pursuant to 28 § U.S.C. 2255 was filed on March 7, 2005. A copy of said motion was sent to the defendant who was housed at Federal Correctional Institute Schuylkill, Minersville, Pennsylvania. That upon review of the motion defendant realized that one of the arguments (ineffective assistance of trial counsel) in which he had requested, and actively participated in preparing was erroneously omitted from the motion that was filed.

The defendant immediately notified undersigned counsel who contacted the Assistant United Stated Attorney to inform her that counsel had inadvertently omitted an argument and that counsel would be filing a motion to amend the motion to vacate, set aside or correct his sentenced, pursuant to 28 § U.S.C. 2255. At that time government counsel indicated to the undersigned that they had not had an opportunity to even review the original motion and that she would take no position on our filing a motion to amend. Counsel immediately filed a motion to amend motion to vacate, set aside, or correct sentence accompanied with the amended motion to vacate, set aside

2

or correct his sentenced, pursuant to 28 § U.S.C. 2255. On or about April 26, 2005, the court granted defendant's motion to amend motion to vacate, set aside or correct his sentenced.

Here, the failure to include the requested and much researched argument in the first filing rest solely with undersigned counsel. Defendant had at all times indicated that ineffective assistance of trial counsel was one of the issues that he wished to pursue. In fact, defendant had actively participated in the research and the development of said issue.[1] Unfortunately, throughout the preparation of the motion defendant remained housed in Minersville, Pennsylvania; therefore, most communications were limited to either the mail or the telephone.

There is no dispute that the law indicates that 28 § 2255 states that a one year period of limitation shall apply to a motion. The statutes states that the limitation period shall run from the latest of-

> (1) the date on which the judgment of conviction becomes final;
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactivity applicable to cases on collateral review; or
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

In the Government's initial opposition, it argues *United States v. Hicks,* 283 F.3d 380 (D.C. Cir. 2002) supports their theory that the claim at issue should be dismissed as time barred because it was filed 30 days after March 8, 2005. A reading of the *Hicks* case

---

[1] Defendant had participated in securing the necessary affidavits from four witnesses, which were in counsel's possession, at the time of the filing of the original motion to vacate, set aside or correct his sentence.

3

indicates that the amended motion in that case was filed on July 26, 2000 over Five months after the government had responded to the original motion and over Seventeen months after he had filed his original motion on November 2, 1998.

In the instant case the defendant was sentenced, May 29, 2002, he noted an appeal on June 5, 2002. On September 16, 2003, the United States Court of Appeals for the District of Columbia affirmed the judgment of the Court.   Defendant filed a petition for writ of certiorari with the Supreme Court of the United States of America, which was denied on March 8, 2004.  Therefore, his motion to vacate, set aside or correct his sentenced, pursuant to 28 § U.S.C. 2255 had to be filed on or before March 8, 2005. There is no dispute that the initial motion to vacate, set aside or correct his sentenced, pursuant to 28 § U.S.C. 2255 was timely filed on March 7, 2005; furthermore, the issues presented in the initial motion which were identical to those presented in the amended pleading relate back to the initial filing and are timely.  The only question that remains is should the defendant's issue concerning the ineffective assistance of trial counsel be considered.

Although the D.C. Circuit has not addressed whether equitable tolling applies to Section 2255 habeas claims, the Court explained that *if* tolling does apply, it would only be justified by "extraordinary circumstances." *United States v. Cicero, 214 F.3d 199, 203 (D.C. Cir. 2000).*  Such circumstances do not include ignorance of the law, unfamiliarity with the legal process, or sitting on one's rights. *See Baylor v. United States, 314 F. Supp. 2d 47, 52(D.D.C. 2004)(citing Caldron v. United States Dist. Court, 128 F.3d 1283, 1289 (9th Cir. 1997).*

In the instant case, the government had not responded to defendant's original motion. In fact, according to the government counsel, they had not even reviewed at the time undersigned counsel contacted them concerning his oversight. Here the delay was the difficulty with defendant being housed by the federal government in a different State and allowing him to physically review said motion prior to it being timely filed. The defendant caused no delay. The omission in including an argument that was researched and prepared to be filed was simply an omission by counsel. Clearly throughout this entire proceeding the defendant actively participated by being instrumental in obtaining the affidavits which were filed in the case, and committing countless hours to research and suggestions. Moreover, the government is not prejudiced by the court allowing this matter to be determined on its merits.

In fact, the interest of justice and fairness dictate a resolution on the facts. Defendant requests that the Court considers that "extraordinary circumstances" existed and that there was an equitable tolling from March 7, 2005 until April 8, 2005.

## B. **Whether the Trial Attorney Was Ineffective?**[2]

Evidence Elicited from Hearing

On January 15, 2005, the Court conducted an evidentiary hearing in which the testimony of Defendant, Attorney Larry Nathans (Nathans), and Kent Robinson (Robinson) was considered. During the hearing, Nathans was specifically questioned concerning his pre-trial investigation, and his trial strategy.

(a)     Pre-Trial Investigation

---

[2] The Defendant incorporates all previous arguments made in the amended motion to vacate, set aside or correct his sentenced.

According to Nathans his trial investigation consisted of obtaining discovery from and meeting with government counsel, meeting with the Defendant to discuss relevant information concerning cooperating witnesses and potential witnesses for the defense and delegating certain tasks and roles to an investigator. (See transcript pages 37 line 24 through page 38 line 24; page 39 line 12 through 40 line 20; page 41 line 3 through line 23)

As a result of the pre-trial investigation, Nathans was able to amass the following:

i. The number of potential cooperating witnesses
ii. The Maryland tax records, MVA records, and credit records of the cooperating and potentially cooperating witnesses
iii. The incarceration and criminal history of cooperating witnesses
iv. Probation records of any all cooperating witnesses
v. Department of Corrections records that revealed Government witness Phyllis Webster visited cooperating witness James Miles while he was imprisoned

(b) Trial Strategy

According to Nathans, his trial strategy consisted of the following:

i. Limiting through agreements with the government the amount of potentially prejudicial evidence that would have otherwise admitted
ii. Sanitizing any questions surrounding Defendant's pre-trial fugitive status
iii. Persuading the government not to introduce into evidence allegations which tended to allegedly establish Defendant's presence in a stash house
iv. Attempting to prove that cooperating witnesses testified untruthfully by obtaining information concerning witnesses that witnesses had no knowledge
v. Portraying Phyllis Webster as the hub of the charged conspiracy and Defendant as the fall guy
vi. Undermining the credibility of the cooperating witnesses by illustrating their bias and highlighting the fact that they

6

>received favorable plea agreements or other incentives in exchange for their cooperation.
>(See transcript page 43 line 4 through page 45 line 8)
>At no time did Mr. Nathan and/or his agent or investigator interview any potential witness. (See transcript page 86 line 13 through page 87 line 15)

Argument

The threshold question before the court is whether Nathans investigative failures are entitled to the degree of deference in which counsel's performance is customarily afforded under *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires that review of counsel's performance must be highly deferential and the propriety of all counsel's actions (or lack thereof) should be viewed at the time of counsel's conduct rather than with the benefit of hindsight. *Id. at 689-90*. Of course, to establish that Nathans investigative failures deprived defendant to the right of counsel as the right is guaranteed under the Sixth Amendment, defendant must demonstrate that: (1) counsel's investigative errors were so serious that he was not functioning as the 'counsel' guaranteed under the Sixth Amendment, (2) there is a reasonable probability that, absent the unreasonable investigation, the fact finder would have had a reasonable doubt respecting guilt. *Id at 687,695*.

II. Allegation of Ineffectiveness

Inherent in the right to effective representation is the duty of counsel to make reasonable investigations or to make reasonable decisions that make particular investigations unnecessary. *Strickland at 691*. However, counsel's decision to limit his investigation must be based on an (objective) reasonable judgment which supports the limitation of the investigation. In the instant case, even if Nathan subjectively believed that failing to interview Robinson, Douglas, or any other potential witness was

7

strategically in the best interest of defendant. Such a strategy cannot be considered as objectively sound or reasonable. See *Roe v. Flores-Ortega,* 528 U.S. 470, 481 (2000), "the relevant question is not whether counsel's choices were strategic, but whether they were reasonable."

Nathans acknowledged during the evidentiary hearing that his reason for not interviewing either Robinson or Douglas was based in part of his professional judgment and defendant's opinion that neither witness would be beneficial to the defense. As further support for his failure to interview Robinson and other witnesses, Nathans cited their criminal records as a factor which may have impugned their credibility as witnesses. Nonetheless, Nathans acknowledged that he should have interviewed the witnesses in an effort to determine whether any of the witnesses possessed any information which would have been relevant to the defense. Furthermore, Nathans indicated neither that he nor his investigator actually interviewed any witness or potential witness even the ones who did not have counsel who the government indicated were somewhat involved with the case but that they were not calling.

This Circuit has noted that counsel's decision not to call a particular witness 'might' be protected from a claim of ineffective assistance of counsel 'if' counsel makes such a decision subsequent to interviewing the witness. See *United States v. Debango*, 780 F.2d 81, 85 (D. C. Cir. 1986). In *Bryant v Scott*, 28 F.3d 1141 (5th Cir. 1994), the defense attorney failed to interview two eyewitnesses and "restricted his pretrial investigation to discussions with [the defendant] …, and examination of the prosecutor's file." *Id at 1418.* The court concluded that "information relevant to the defense might have been obtained through better pretrial investigation of the eyewitnesses, and a

reasonable lawyer would have made some effort to investigate the eyewitness testimony." Analogous to counsel in *Bryant*, Nathans pretrial investigation consisted of discussions with Defendant and examination of the discovery provided by the government. Although Nathans did conduct further investigations into the histories of the cooperating witnesses, he, like the counsel in *Bryant,* made no effort to investigate the substance of any testimony which could have been provided by the potential witnesses. Moreover, the *Bryant* court stated without so much as contacting the witness, much less speaking with him, counsel is "ill equipped to assess his credibility or persuasiveness as a witness." *Id at 1419*; See also *Lord v. Wood*, 184 F.3d 1083 (9th Cir. 1999).

In sum there is no evidence that Nathan's decision to forego interviewing the potential witnesses was reasoned at all.

## II. Prejudice

Under *Strickland's* second prong, Defendant must establish "prejudice" – a "reasonable probability that, but for [Nathans failure to interview the potential witnesses], the result of the proceeding would have been different." *Id at 694*. A "reasonable probability is a probability sufficient to undermine confidence in the outcome."

The Government's case rested primarily on the testimony of Webster and to a somewhat lesser extent, the testimony of Mr. Ernest Minder (Minder). There was no physical evidence connecting Defendant to the charged conspiracy. The physical evidence possessed by the government established, at a minimum that defendant knew Webster. Much of the government's case was predicated on the credibility of Webster and Minder.

9

Robinson's testimony would have discredited the government's theory as to how defendant and Webster were introduced and subsequently began "dealing drugs" together; thus a void in the central fabric of the government's case as to how the conspiracy developed. Obviously, Robinson indicated that he may have exercised his right to invoke the Fifth Amendment with respect to his involvement with illegal activity; nonetheless, he stated quite clearly that he would have certainly testified that he did not introduce Webster to defendant as Webster claimed.

Douglas's testimony in conjunction with the testimony David Flowers would have alone substantially impugned the credibility of Minder who had indicated to him that he did not even know the defendant.[3] Clearly, if Minder does not actually know defendant then a reasonable jury could find that Minder did not sell drugs for the defendant.

The testimony of Douglas, Flowers and Robinson together would have undermined the government's case. Given their testimony, there is a reasonable probability that the jury would have had a reasonable doubt with respect to defendant's guilt in the instant case.

## C. Whether The Court Has Authority To Re-Sentence Defendant[4]

The court has previously denied this claim in its Memorandum Opinion and Order Dated January 4, 2006. However, the Court invited counsel to brief on this matter if he deemed that it was necessary.

### Coles Analysis

---

[3] Although David Flowers did not testify at the hearing, he presented an Affidavit indicating that he had come in contact with Minder at the D.C. Jail and Minder indicated to him that he did not know the Defendant.

[4] Defendant incorporates arguments previously contained in his amended motion to vacate, set aside or correct his sentenced.

10

This Circuit decided *United States of America v. Terrence Coles* 403 F.3d 764 (D.C. Cir. 2005). *Coles,* similar to the instant defendant, found himself convicted subsequent to *Apprendi* however prior to *Booker*. *Coles,* similar to Defendant in the instant case, noted a timely appeal and the state of the case law at the time of the *Coles* appeal was similar to the state of the law at the time of the Defendant in the instant case. Even though *United States v. Fields, 251 F.3d 1041(D.C. Cir. 2001)* was the precedent in this Circuit, the major difference with these two cases is that Appellate counsel for *Coles* raised the *Apprendi* issue whereas Appellate counsel for Defendant did not.

The *Coles* court applied the plain error standard to determine if a Defendant should be re-sentenced. "Under the plain-error standard of Rule 52(b), there must be (1) error, (2) that is plain, and (3) that affects substantial rights. *Coles at767; quoting Johnson v. United States, 520 U.S. 461, 466-67(1977)(quoting United States v. Olano, 507 U.S. 725 (1993).* "If all three conditions are met, an appellate court may then exercise its discretion to notice a forfeited error, but only if the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Johnson at 467 (quoting Olano, 507 U.S. at 732).*

Moreover, it was determined that *Coles* satisfied the first two elements of the plain-error test, "for the District Court applied the Guidelines on the assumption that they were mandatory." The outstanding question in *Coles* was whether or not the District Court error was prejudicial and seriously would affect the fairness, integrity, or public reputation of judicial proceedings. *Coles at 767 .*

The Court reasoned that it must first determine whether there would have been a materially different result, more favorable to the defendant, had the sentence been

11

imposed in accordance with the post-*Booker* sentencing regime. *Id at 767*. The Court indicated that there may be times when it is clear that a Court would have imposed a more stringent sentence if the Sentencing Guidelines were not mandatory yet other times that the court would have imposed a lighter sentence but for the Guidelines. The record in the *Coles* sentencing proceedings unlike the instant case was silent as too whether the court would have imposed a different sentenced but for the mandatory requirements of the Sentencing Guideline. In the instant case, the Court made it clear that it felt that it had no choice but to sentence defendant to the calculated sentence as per the guidelines but it would not have imposed as stringent a sentenced otherwise. This court indicated that "before I hear from anybody about what the appropriate sentence is, I will tell you right now that I'm not going to impose a sentence beyond 324 months because in my view that is more than sufficient to punish Mr. McDade for his conduct. And if there were a lawful way to have wound up at level 30, I don't see any way I could have agreed with Mr. Nathan's argument to wind up at level 32. (Sentencing Transcript Page 55 line 12-20). The court continued by stating, "and having said that and because it seems to me that sufficient punishment would be somewhere below 324…" (Sentencing Transcript Page 56 line 5-7).

Here, when the state of the law was exactly the same at the time both *Coles* and the defendant were sentenced, the decision to potentially re-sentence *Coles* who may not have been prejudiced yet not to re-sentence defendant in the instant case who obviously was prejudiced seriously affects the fairness, integrity, and the public reputation of our judicial system.

Booker Argument

Now, the same Guidelines followed in the sentencing of this defendant have been declared unconstitutional. *United States v. Booker*, 543 U.S. 200 (2005). In *Booker,* the Supreme Court considered the constitutionality of mandatory federal sentencing guidelines, and found them to be an unconstitutional violation of the Sixth Amendment. The sentencing guidelines, written, required federal judges, after obtaining a guilty verdict from a jury, to make factual determinations of whether aggravating factors were present in the commission of the crime. *Id. at 236.* If the court found such factors were present by a preponderance of the evidence, the judge was then required to increase the sentence of the defendant according to the applicable mandatory guideline range. Therefore, after making such findings using the preponderance of the evidence standard, the court was required to sentence defendant to more time then was proscribed by the jury verdict. The *Booker* jury returned a verdict of guilty of possessing at least 50 grams of crack cocaine, a crime carrying a maximum sentence of 210-262 months under the guidelines. The trial court then found, by a preponderance of the evidence, that the defendant actually possessed an additional 566 grams of crack, a finding that increased the maximum sentence by approximately ten years. Consistent with prior decisions, the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt. *Booker @ 231(quoting Apprendi v. New Jersey,* 530 U.S. 466, 490 (2000)).

The instant defendant's case is factually similar to *Booker.* The defendant was found guilty of conspiring to distribute and possess 5 kilograms of a mixture or substance

containing cocaine. At the time the sentencing was imposed, the Court was narrowly restricted in exercising its discretion by then existing mandatory federal Sentencing Guidelines. Without the Court's finding of drug amounts and leadership, the Court would have imposed a substantially lower sentence. However, the Guidelines were mandatory and the Court was required, by a preponderance of the evidence, to find the amount of drugs and other sentence enhancements. The Court found by a preponderance of the evidence that the defendant was guilty of conspiracy to distribute over 150 kilograms of a mixture or substance containing cocaine, and that defendant had a managerial or supervisory role in the conspiracy. Defendant received an actual sentence of 324 months. Clearly, the *Booker* court would have reached the same ruling if they were deciding the facts of the instant case instead of the facts in the *Booker* case since analogously they are very factual similar.

It follows that sentences imposed under an unconstitutional sentencing scheme should, in fairness, be reconsidered. Nonetheless, most of the Circuits after analyzing the *Booker* decision with respect to a Sixth Amendment violation have held that the *Booker* decision is not retroactive. The *Booker* Court was asked to answer the specific question of "whether the Sixth Amendment was violated by the imposition of an enhanced sentence under the United States Sentencing Guidelines based on the judge's determination of a fact (other than prior conviction) that was not found by the jury or admitted by the defendant." *Booker, at* 229 n.1  The Court answered in the affirmative, concentrating its analysis on the Sixth Amendment, as that was the question before it. However, as one of the dissenting opinions noted, the decision may implicate Fifth Amendment Due Process concerns as well:

> The commentary to § 6A1.3 states that '[t]he Commission believes that the use of a preponderance of the evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of the guidelines to the facts of a case.' The Court's holding today corrects this mistaken belief. The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence, of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of the facts found by the jury or admitted by the defendant.

*Id. @ 319* n. 6 (Thomas, J. dissenting).

The fact that the Fifth Amendment may be implicated in the decision is important because of the method used to determine retroactivity. In *Teague v. Lane*, 489 U.S. 288 (1989), the Supreme Court declared that a new rule of constitutional law applies to convictions that have already become final only if the new rule is substantive rather than procedural or the new rule is a "watershed" rule implicating fundamental questions of fairness. To date, the Supreme Court has never found such a "watershed" rule. However, if a rule is substantive, then it may be retroactive.

There is some support within *Booker* that the new rule was intended to be substantive in nature and not procedural. As the majority states, the Court was "not motivated by Sixth Amendment formalism, but by the need to preserve Sixth Amendment substance." *Booker at 237.* Clearly *Booker* created substantive changes in the law by finding that mandatory sentence enhancements had effectively been elements of the crime. The Supreme Court has previously stated that "new substantive rules are those that 'modif[y] the elements of an offense' because '[n]ew elements alter the range of conduct the statute punishes, rendering some formerly unlawful conduct or vice versa" *Schriro v. Summerlin,* 542 U.S. 348, 354 (2004)). Furthermore, *Booker* implicitly recognizes a risk that prisoners sentenced under the guidelines may in fact be assessed aggravating factors under a preponderance standard which would not be imposed under a

15

beyond a reasonable doubt standard. "[R]ules that modify the element of a crime are applied retroactively because holding otherwise 'carr[ies]a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Schriro, @ 352*.

Given the Sixth Amendment analysis, the court should conclude that *Booker* is retroactive to the instant defendant's case.

Disparity of Sentences

There were multiple individuals charged in the instant conspiracy all of varying roles and responsibilities.[5] There is no dispute that the court concluded the defendant was a supervisor or manager; however, there were others, Cornelius Singleton, Phyllis Webster, and Michael Anthony Johnson, who "allegedly" were more involved then the defendant yet the defendant received a longer sentence then all involved.

This Circuit addressed the issue of disparity between co-defendants in *United States of America v. Williams, 980F.2d 1463 (D.C. Cir. 1992)*. The *Williams* case presented a situation in which on defendant received a 78 month sentences whereas a co-defendant received a probationary sentence involving the same transaction. The co-defendant in the *Williams* case received a more favorable disposition because she plead guilty and cooperated with the government. The *Williams* court reasoned that, "The rule that Williams urges, moreover, would undermine the practice of plea bargaining. In this case, Williams' attorney contended that Williams deserved a downward departure, in

---

[5] On March 16, 2000, a grand jury returned a one-count indictment charging Cornelius Singleton, Phyllis Webster, Michael Anthony Johnson, Byron McDade and Benjamin Ashe and others persons known and unknown to the grand jury with conspiring to distribute and possess with an intent to distribute a mixture and substance containing a detectable amount of cocaine in the amount of Five kilograms or more. Two others, Lionel Nunn, and Lauren Jefferson were added in subsequent superseding indictments. Later, another indictment was returned naming only Cornelius Singleton and Byron McDade, the other named co-defendant's had entered pleas of guilty.

16

part, because Anna Singleton "benefited so well from the gratuities of the government plea offer of a misdemeanor." The efficiency and propriety of the prosecutor's decision to seek cooperation of an individual found with one small zip-lock bag of crack to facilitate the prosecution of someone found with 53 zip-lock bags of crack is beyond question. See *Brady v. United States, 397 U.S. 742, 751-52 (1970).* The efficacy of this arrangement would surely decrease if every time the government exchanged a plea bargain for a witness cooperation it took the risk that the plea would water down the sentences imposed on the other defendants." *Id at 1467.*

Clearly, the *Williams* case is distinguishable form the instant case. Although arguable some of the co-defendants cooperated with the government and accepted plea agreements. At least two (Phyllis Webster and Michael Anthony Johnson) of the individuals unlike the *Williams* case were more culpable and received significantly less time then the defendant. Moreover, the most culpable individual, Cornelius Singleton, who also was found guilty after a trial by jury received considerably less time then the defendant.[6]

## **CONCLUSION**

For the foregoing reasons stated, the Defendant respectfully requests this Honorable Court to vacate his judgment and conviction and remand for a new trial or in the alternative to vacate his sentence and re-sentence him to a term consistent with *Booker*, or in the alternative allow a belated appeal to address these issues.

---

[6] Cornelius Singleton received a sentence of 285 months.

Respectfully submitted,

*/s/Antoini M. Jones, Esquire*
Antoini M. Jones
6811 Kenilworth Avenue
Suite 210
Riverdale, Maryland 20737
(301) 277-0770

CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Supplemental Memorandum was mailed postage pre-paid and forward view pacer on this 23rd day of April 2008 to:

Assistant United States Attorney
Sherri L. Bethrong, Esquire
555 4th Street, Northwest
Washington, D.C. 20530

*/s/Antoini M. Jones, Esquire*
toini M. Jones