## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | **CRIM.NO. 00-105 (PLF)** |
| | * | |
| **BYRON MCDADE** | * | |

**PETITIONER'S REPONSE TO RESPONDENT'S OPPOSITION TO
PETITIONER'S SUPPLEMENTAL MEMORANUDUM TO VACATE, SET
ASIDE OR CORRECT SENTENCE PURSUABT TO 28 U.S.C. § 2255**

The Government filed its response to Petitioner's Supplemental Memorandum in

support of relief via U.S.C. § 2255 and argued, <u>inter alia,</u> that the Supreme Court's

decision in <u>United States v. Booker</u>, 543 U.S. 220 (2005) was not retroactively applicable

to cases on collateral review, trial counsel's representation was not constitutionally

ineffective (for failing to adequately investigate and/or call potential witnesses for the

defense), and the ineffective assistance of trial counsel claim should be dismissed

because it did not "relate back" to the timely filed Section 2255 claims and that Petitioner

was not entitled to equitable tolling.  Petitioner, through undersigned counsel, proffers the

following facts and law in support of his opposition to the Government's Response.

## <u>ARGUMENT</u>

I.      **Petitioner was denied the effective assistance of counsel in violation of the
        Sixth Amendment as a result of trial counsel's unreasonable failure to
        investigate and /or interview (and call as witnesses) readily available
        witnesses material to the defense whom would have undermined the
        reliability of testimony proffered by essential Government witnesses.**

The question whether the testimony of trial counsel (at the evidentiary hearing) established that his representation fell below the standards of effectiveness required under the Sixth Amendment must be assessed under the standard enunciated in Strickland v. Washington, 466 U.S. 668 (1984). In Strickland, the Supreme Court articulated the standard for establishing an effective assistance of counsel claim such as that at present. Petitioner must demonstrate both that: (1) trial counsel's performance was deficient, i.e., that his investigation fell outside the wide range of objectively reasonable conduct expected of counsel is similar situations, and (2) trial counsel's (un) reasonable investigation prejudiced his defense rendering the outcome of proceedings unreliable. Id. 466 U.S. @ 687; See also United States v. Barbour, 813 F. 2D 1232, 1233-34 (D.C. Cir. 1987). The government contends that trial counsel's decision not to interview Rodney Douglas, David Flowers and Kent Robinson (or place call any of these individuals to testify in Petitioner's defense) was sound trial strategy and that the decision was partially attributable to Petitioner whom, according to trail counsel, was against using any of these individuals as witnesses for the defense. The Government's assertions (nor the testimony of trial counsel) are not supported by the record.

(i)      **Deficient Performance**

It is well established that counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. See Strickland, 466 U.S. @ 691. The duty to investigate derives from counsel's basic function, which is to take the adversarial testing process work in a particular case. See Kimmelman v. Morrison, 477 U.S. 365, 384 (1986). Only when reasonable investigation has been

performed is counsel in a position to make informed tactical decisions with respect to how the defense is to be conducted. It is especially important that counsel adequately investigate the case in order that at the very least he can provide minimally comptent professional representation. As the court stated in <u>Barbour</u>, **"effective representation hinges on adequate investigation and pretrial preparation…for investigation may help an attorney develop or even discover a defense, located a witness or unveil impeachment evidence."** Id.  813 F.2d @ 1234.

Ineffectiveness of counsel is clear if the attorney fails to investigate a plausible line of defense or interview available witnesses. These can hardly be considered strategic choices since counsel by his failure has not obtained the facts upon which such a tactical decision could be reasonably made. See <u>Nealy v. Cabana</u>**,** 764 F. 2d 1173,1178 (5th Cir.1985); <u>United States v. Gray</u>,  878 F. 2d 702  (3rd Cir.1989). Thus, the relevant question is not whether counsel's choices were strategic, but whether they were reasonable. See <u>Roe v. Flores-Ortega</u>, 528 U.S. 470.481 (2000). A purportedly strategic decision is not objectively reasonable "when the attorney has failed to investigate his options and make a reasonable choice between them." <u>Horton v. Zant</u>, 941 F.2d 1449,1462 (11th Cir.1991).

According to trial counsel's evidentiary hearing testimony, his primary trial strategy focused on, among other things, undermining the credibility of Government witnesses by eliciting evidence that the witness was unaware of in an effect to show (the jury) that the witness had testified untruthfully in court. See Transcripts, 1/15/08 @ 43, 84.

At no juncture of the section 2255 Proceedings has Petitioner challenged trial counsel's strategy as unreasonable. Rather, Petitioner has consistently challenged the unreasonableness of the investigation in support of that strategy. The record reflects that

counsel failed to interview three possible defense witnesses (Mr. Douglas, Mr. Flowers and Mr. Robinson), all of whom were readily available and would have buttresses counsel's strategy by placing evidence before the jury that would have reasonably had the effect of undermining the credibility of Government witnesses Phyliss Webster and Ernest Minder by raising the possibility that both witnesses had testified mendaciously when proffering their respective testimonies against Petitioner.

At the evidentiary hearing trial counsel cited a myriad of factors in support of his decision to forego interviewing (and conducting further investion into) the three individuals named by Petitioner: Mr. Douglas, Mr. Flowers and Mr. Robinson. The factors warrant a brief discussion.

Trial counsel stated that he was against using the statements of Mr. Douglas, whom Mr. Minder had told that he did not know Petitioner; because of evidence that Petitioner had previously admitted 'knowing' Mr. Minder and that he (counsel) assumed that the government would diminish the testimony given by Mr. Douglas by proffering testimony that Mr. Minder had only made the statements as a tactic to conceal his cooperation with the government.

First, trial counsel's assumption that he was told by Petitioner that he knew Mr. Minder completely misstates the record. Petitioner had informed counsel that he had seen Mr. Minder at the Midtown Café on different occasions but never gave counsel the impression that there was any other association  between he and Mr. Minder outside the context of the two seeing each other at the Midtown Café on different occasions. Moreover, trial counsel, whom referred to his notes on several instances while discussing Mr. Minder, never claimed that he had made a reference in his notes that among the reasons he had not

sought to interview Mr. Douglas (or present his testimony to the jury) was because Petitioner 'knew' Mr. Minder. Also, trial counsel failed to name any government witness whose testimony would have established that Petitioner and Mr. Minder had any other association other than that previously described.

Trial counsel's assumption that Mr. Minder's comments to Mr. Douglas would be exploited and/or just justified by the Government as Mr. Minder's fear of divulging to anyone that he was cooperation with the Government is flawed. This presumption 'necessarily assumes' that the credibility of Mr. Douglas would have been impugned or out-right rejected by the jury as spurious. Trial counsel, however was not positioned to question the credibility of Mr. Douglas as a ' strategic decision' not to interview or call this person as a witness because a witness's character flaws cannot support a failure to investigate. See <u>Anderson v. Johnson</u>, 338 F.3d 382,392 (5th Cir.2003). If counsel does not speak to a witness, then counsel **"is ill-equipped to asses his credibility or persuasiveness as a witness."** Id. (emphasis added): See also <u>Griffin v. Warden</u>.970 F.2d 1355,1358 (4th Cir.1992)(holding that counsel did not make a strategic choice not to call a witness when a counsel did not talk to that witness).

With regard to Mr. Robinson, counsel testified that he and Petitioner spoke frequently about Mr. Robinson (See Transcripts. 1/15/08 @ 60-61) and that Petitioner ultimately concluded that he did not want to call Mr. Robinson as a witness. Even assuming, but not conceding, that Petitioner was initially reluctant to call Mr. Robinson as a witness as counsel's pre-trial notes reflect[1].  Petitioner's reticence "did not absolve

---

[1] The fact that counsel's pretrial notes claim that Petitioner did not want to call Mr. Robinson as a witness is not dispositive to Petitioner's contrary assertions of his conduct **during trial.** Recall, Petitioner's testimony indicated that he spoke with counsel about

counsel of his independent professional responsibility to investigate what information [Mr. Robinson] possessed, even if he later decided not to put [him] on the stand. Gray, 878 F.2d @ 712.  Furthermore, based on the volume of pre-trial discussions between Petitioner and counsel (with respect to Mr. Robinson), and the fact that counsel was indeed cognizant, through discussions with the Government Prosecutor and through pre-trial discovery indicating that Ms. Webster had allegedly began her relationship (drug dealing) with Petitioner through Mr. Robinson, that this witness was indeed central to the Government's case. Hence, because the Government gave no indication that it intended to call Mr. Robinson (or had even interviewed this witness), that "this should have been a red flag alerting counsel that [Mr. Robinson] may have been useful for the defense," see Anderson, 338 F.3d @ 393 n. 52 [2], and the more prudent decision of counsel would have been to at least interview this individual since he was clearly material to the Governments case.

---

calling Mr. Robinson as a witness not only before trial (See Transcripts, 1/15/07 @ 22-23) **but during the actual trial in** response **to the testimony of Ms. Webster.** Id Counsel testified that he **did not** have his trial notes which would have divulged his communications with Petitioner during the course of the trial. Id @ 56. Therefore, the Government's assertion that trial counsel's notes reflect that he was against calling Mr. Robinson as a witness throughout the proceedings lacks support in the record.

[2] In Anderson, the defendant was charged and convicted with the attempted kidnapping and shooting of Dorothy Brister. On May 26,1992, one day before Brister was scheduled to testify in court, an individual posing as a police officer arrived at her home. The imposter coerced Brister into her rental car and she was eventually shot while attempting to flee. The attack was witnessed by Arthur Gray, whom had attempted (unsuccessfully) to apprehend the assailant. The defendant was arrested three years later when Brister recognized his voice and identified him as the assailant. The defendant was identified by Brister and her daughter in a line-up prior to trial. After a second trial, the defendant was convicted. The conviction was later overturned based on an affidavit that was submitted by Gray attesting that the defendant was nowhere around the scene of the shooting. The court determined that counsel had provided ineffective assistance of counsel stemming from his failure to call him as a witness.

Analogous to Anderson, trial counsel in the present case was aware of Mr. Robinson prior to the trial and opted not to interview this individual even though his name appeared in the discovery on several occasions and even considering that it was clear that this

The unreasonablness of trial counsel's investigation is also underscored by three other distinct factors.

First, counsel testified that he sought to interview all of the potential cooperators by seeking the permission of their respective attorneys (See Transcripts, 1/15/08 @ 86). Having made this effort to contact (to no avail) potential cooperators, there is simply no plausible reason which would justify counsel's failure to interview Mr. Douglas, Mr. Flowers and Mr. Robinson, all of whom were, unlike the cooperating witnesses, readily available to the defense.

Second, counsel acknowledged with respect t Mr. Douglas and Mr. Robinson, that in hindsight the more sagacious course of action would have been to interview both witnesses to, at a minimum, discern whether they had any information which would have been beneficial to the defense (See Transcripts, 1/15/08 @ 51,73). While Strickland generally cautions against assessing the performance of counsel under the distorting effects of hindsight, id. 466 U.S. @ 689, Strickland makes clear that his standard of review **only** applies to the reviewing court and does not address the scenario where counsel has admitted that his investigation was deficient in hindsight.

individual was not cooperating with the government. The conduct of trial counsel is similar tot hat of attorney in Anderson, who failed to investigate Gray despite his awareness of the 'potential' materiality of the witness and the government's decision not to call this individual as a witness. Trial counsel's failure to conduct a reasonable investigation into Mr. Robinson, a known and potentially important witness, s no less egregious than that of counsel in Anderson because the decisions of both counsels (to forego investigation of a potential witness whom could possibly exculpate their client) were decisions made without undertaking a full investigation into whether these individuals could assist in their respective defenses. See Combs v. Coyle, 205 F.3d 269,288 (6th Cir.2000). By failing to even contact Mr. Robinson-despite explicitly acknowledging the materiality of this witness through a multitude of talks with Petitioner and the Prosecution- trial counsel "abandoned his investigation at an unreasonable juncture, making a fully informed decision with respect to [whether to call Mr. Robinson as a witness] impossible." Wiggins v. Smith, 539 U.S. 510,527-28 (2003).

Third, counsel indicated that he would have conducted a more thorough investigation (by making an effort to interview the witnesses) if he had multiple witnesses and knew what their information would entail. This rationalization is clearly inconsistent with <u>Strickland's</u> duty of counsel to conduct reasonable investigations. First, "because [a more thorough] investigation [of Mr. Robinson, Mr. Douglas and Mr. Flowers] might have revealed evidence bearing upon the credibility of the Government witnesses (which…was the sole issue in the case [due to the lack of physical evidence linking Petitioner to the charged conspiracy]), the failure to investigate was not objectively reasonable." <u>Williams v. Washington</u>, 59 F.3d 673,681 (7th Cir.1995). Second, counsel must ordinarily make an endeavor to investigate means for impeaching prosecution witnesses and in some instances, such as present, failure to do so many suffice to prove a claim under <u>Strickland</u>. See <u>Tucker v. Ozmint,</u> 350 F.3D 433,444 (4th Cir.2003) ("Trial counsel have an obligation to investigate possible methods for impeaching a prosecution witness, and failure to do so may constitute ineffective assistance of counsel"): <u>Reynoso v. Giurbino</u>, 462 F.3d 1099,1112 (9th Cir.2006)(same); <u>Montgomery v. Petersen</u>, 846 F.2d 407,413-14 (7th Cir.1988)(same).

Perhaps the most deleterious facet of counsel's theory (that the potential witnesses were not investigated more thoroughly based on the decision of Petitioner that he did not want to call any of these individuals as witnesses) would be the affidavit submitted by Mrs. Tracey McDade explaining that counsel was give additional monies for the purpose of hiring an investigator to contact potential witnesses. Trial counsel, nor the government, has addressed this particular facet of Petitioner's idea to forego a more thorough investigation

flies in the face of the substance of Mrs. McDade's uncontradicted assertions and thus counsel's theory should be rejected by this court as inconsistent with the records.

In sum, Petitioner argues that this is a case where the failure to investigate constitutes deficient performance because the record reveals that counsel had a reason to know, form an objective standpoint, that possibly impeaching evidence was available and reasonably competent counsel would have, at a minimum, made an effort to interview the witnesses readily available to the defense. See <u>Crisp v. Duckworth</u>, 743 F.2d 580,584 (7th Cir.1984) ("[A] n attorney who fails even to interview a readily available witness whose noncumulative testimony may potentially aid the defense should not be allowed automatically to defend his omission simply by raising the shield of (trial strategy and tactics). Thus, trial counsel's strategic decisions are not entitled to the normal degree of deference accorded such decisions under Strickland due to the evident unreasonableness of his investigation in support of his strategic decisions.

**-Prejudice**

The prejudice prong of <u>Strickland</u> necessitates an evaluation of whether trial counsel's investigators were prejudicial. Prejudice exist if there s a reasonable probability that, but for counsel's failure to interview or call Mr. Douglas, Mr. Flowers and Mr. Robinson as witnesses for the defense, the result of the proceeding would have been different. See <u>Strickland</u>, 466 U.S. @ 694.

Here, if trial counsel had interviewed the potential witnesses he would have discovered meaningful impeachment information relevant to Petitioner's defense. He would have learned that Mr. Minder had told at least two individuals (on different occasions) that he did not know Petitioner. He also would have gleaned that Mr. Robinson

did not introduce Ms. Webster and Petitioner nor did he ever give Petitioner cocaine (or any other illegal substance) that he had gotten from Ms. Webster[3]. The Government 's case was largely predicted on the credibility of Ms. Webster and Mr. Minder. There was no physical or audio evidence which definitively linked Petitioner to the conspiracy. As a result, it cannot be said that Mr. Douglas, Mr. Flowers and Mr. Robinson's respective testimonies would have had an insignificant effect on the jury's evaluation of the Government's case and the evidence in support thereof. On the other hand, given the absence of any defense witnesses to support counsel's strategy, i.e., to show that the Government witnesses were lying, when the defense witnesses whom would have proffered such testimony were readily available, it cannot be said (with confidence) that Mr. Douglas, Mr. Flowers and Mr. Robinson's testimonies would have been merely cumulative

---

[3]     The Government's contention that Mr. Robinson's testimony would have been stricken had he testified lacks merit. When a witness refuses to answer questions based on Fifth Amendment privileges, striking the witness's entire testimony is an extreme sanction. See United States v. Lord, 711 F2d 887, 892 (9th Cir.1983). A trial judge may only apply this sanction when the questions asked pertains to matters directly affecting the witness's testimony; the judge may not use the sanction when the privileged answer pertains to a collateral matter. Id.

    The testimony, which would have been given by Mr. Robinson would have related to an incident, which took place 'outside' the scope of the charged conspiracy. There is no indication in the record that Mr. Robinson's testimony would have covered anything other than the limited questions of whether he had facilitated drug deals between Ms. Webster and Petitioner by acting as a intermediary (between the two) and whether he had later introduced the two Mr. Robinson's evidentiary hearing testimony clearly indicates that he would have answered those questions without invoking his Fifth Amendment privilege.

    The Government makes the unsupported assumption that Mr. Robinson's testimony would have been stricken because he would been likely invoked his Fifth Amendment privilege to any other questions outside the scope of his limited testimony. Because he would have likely invoked the privilege to collateral matters, exclusion of his testimony would have been improper. Several courts, which have addressed this issue have unambiguously stated that testimony (similar to that of Mr. Robinson) should not be stricken. See Lord. 711 F. 2d @ 892; United Sates v. Zapata, 871 F. 2d 616, 624 (7th Cir.1989); United States v. Negrete-Gonzalez, 966 F. 2d 1277,1281 (9th Cir. 1992).

of other evidence offered by the defense. Rather, the testimony of these witnesses was critical to buttress counsel's strategy, and their testimony would have created more equilibrium in the evidence presented to the jury. Under such circumstances, there is a reasonable probability that the outcome of the case would have been different if the testimony of these witnesses had been presented to the jury. See Strickland, 466 U.S. @ 694. Specifically, had the jury heard the defense witnesses testimony contradicting that of Mr. Minder and Ms. Webster, the jury would have had a reason to question whether any drug deals had transpired between Petitioner and Mr. Minder and would have led the jury to question how (and if) a drug dealing relationship had ever existed among Petitioner and Ms. Webster and would have necessarily impaired the Government's theory on how the charged conspiracy was eventually founded.

In sum, in evaluating the totality of trial counsel's omissions under Strickland, the effect of his objectively deficient investigation clearly undermined confidence in the outcome of Petitioner's trial. Id. 466 U.S. @ 694.

---

**II.     The district court 'may' apply the doctrine of equitable tolling to Petitioner's ineffective assistance of trial counsel claim filed 'after' the one-year limitation period of Section 2255¶6(1) had expired due to exceptional circumstances.**

The doctrine of equitable tolling is available only in those are instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result. See Rouse v. Lee, 339 F.3d 238,246 (4th Cir.2003). While the D.C. Circuit has yet to definitively address the issue of the application of equitable tolling to Section 2255

proceedings, it has indicated that numerous other circuits have concluded that equitable

tolling may be applied in Section 2255 proceedings under certain circumstances. See

United States v. Pollard, 416 F.3d 48,56,n.1 (D.C. Cir. 2005).

The D.C. Circuit has generally noted that garden variety claims of attorney

malfeasance do not suffice to warrant equitable tolling. See United States v. Cicero,

214 F.3d 199 (D.C. Cir. 2000); United States v. Saro, 252 F.3d 449 (D.C.Cir.2001).

Neither court discussed the circumstances under which equitable tolling may be

warranted as a result of attorney malfeasance though Saro acknowledged that a party

may qualify for tolling due to attorney malfeasance. Id. 252 F.3d @ 454.

The context in which Petitioner asserts that equitable tolling is warranted to

render timely his claim of ineffective assistance of trial counsel was addressed in

United States v. Wynn, 292 F.3d 226 (5th Cir.2002). In Wynn, the petitioner was

informed by appellate counsel in June of 1999 that he would file a section 2255 motion

on his behalf. Appellant counsel then informed the petitioner in or around May of 1999

that he had filed the Section 2255 Motion and that a copy would be forwarded to the

petitioner. In June of 1999, the petitioner wrote a letter to the clerks office requesting

copies of any and all motions that had been filed on his behalf (including any motion

relevant to the Section 2255). In October of 1999, the petitioner wrote the court to

ascertain the status of the section 2255 motion and to inform the court that he had not

heard from his counsel in several months. Later the same month the petitioner was

advised by the law clerk for the district court that no Section 2255 motion had been

filed. A few days later, in response to the law clerk's letter, the petitioner attempted to

contact counsel to no avail. The petitioner then contacted his father and requested that

he relay his appellant counsel the information provided in the letter from the law clerk. In the same month of October Petitioner's father contacted the appellant counsel and informed him of the contents of the law clerk's letter to which appellant counsel responded that no filing was on the record because he had filed the Section 2255 motion directly with the judge. In August of 2000, the petitioner, after repeated attempts to contact appellate counsel, requested that his father purchase a copy of the docket sheet, which revealed that no section 2255 motion had ever been filed. In September of 2000, the petitioner wrote the court detailing the events which had transpired and sought legal advice. In October of 2000, by order, the court incorporated the petitioner's letter as part of the record and advised the petitioner that he could not provide him with legal advice. The court additionally informed the petitioner that the timeliness of the section 2255 motion would be considered upon its filing. The petitioner filed his section 2255 motion 78 days later. The district court dismissed the section 2255 motion as time-barred. The court noted in its dismissal that the petitioner had alleged deception be counsel as precluding the timely filing of his section 2255 motion. The district court ultimately concluded that the petitioner was not entitled to equitable tolling based on his failure to pursue the filing of the section 2255 with diligence and alacrity. The district court concluded that the petitioner should have learned that no motion had been filed as early as October 23,1999, the date on which the petitioner was informed by the court (via letter) that no Section 2255 motion had been filed. The court additionally found that even if the petitioner's attorney's misrepresentations claim was credible, he idled for 10 months before sending his father to retrieve a docket sheet. In vacating and remanding the judgment of the district court,

the appellate court held that the attorney's deception, in convincing the petitioner that he had timely filed the Section 2255 motion on his behalf, presents rare and extraordinary circumstances which are beyond the petitioner's control and which may warrant equitable tolling of the one-year limitations period of section 2255. Id. 252 F.3d @ 230. The appellate court directed the district court (on remand) to predicate the equitable tolling inquiry on whether the petitioner could establish that appellate counsel had misled his father by telling him a Section 2255 motion had been filed n his son's (the petitioner) behalf  and whether the petitioner reasonably believed appellate counsel misrepresentations as tot the status of the case. Id. @ 230-31.

   Here, although counsel (Mr. Antoini M. Jones) did not actively mislead Petitioner as counsel had done in <u>Wynn</u>, the results are distinguishable. Petitioner prepared and submitted the ineffective assistance of trial counsel claim to Mr. Jones **well** **before** the one-year limitations period expired with explicit instructions t file the ineffective assistance of trial claim **with** the other claims. However, Mr. Jones inadvertently omitted the claim from the timely filed Section 2255 motion as detailed in his affidavit submitted to the district court in August of 2007. Petitioner became aware of the omission approximately 4 weeks after Mr. Jones Section 2255 brief had been submitted upon receiving a copy of the brief from Mr. Jones. Petitioner immediately noticed the error and contacted Mr. Jones, who subsequently moved to amend the ineffective assistance of trial counsel claim.

   Based on the foregoing, it is clear that Petitioner's factual scenario falls within the purview of <u>Wynn</u> to the extent that Petitioner believed that his (entire) Section 2255 motion had been timely filed. The record also reflects that Petitioner,

unlike the petitioner in <u>Wynn</u>, acted with reasonable diligence when he gleamed that

the timely filed Section 2255 motion had omitted the ineffectiveness assistance of trial

counsel claim. There s yet another independent reason why the district court correctly

permitted the addition of the ineffectiveness assistance of the trial counsel claim outside

the one-year limitations period. "The attorney is the petitioner's agent when acting, or

failing to act, in furtherance of the litigation, and the petitioner must bear the risk of

attorney error." <u>Coleman v. Thompson</u>, 501 U.S. 722,753 (1991).

The derivation to this rule is that when an "agent acts in a manner

completely adverse to the [Petitioner's] interest," the [Petitioner] is not charged with

[the] agents misdeeds." <u>Nat'l Union Fire Ins. Co. v. Bonnanzio</u>, 91 F.3d 296,303 (2nd

Cir.1996).

In this instance, Petitioner specifically requested that the ineffective

assistance of trial counsel claim be submitted with the other timely filed claims and by

failing to do what was explicitly requested by Petitioner on such a fundamental matter,

Mr. Jones [inadvertently] violated a basic duty of an attorney to his client. See

<u>Baldayaque v. United States</u>, 338 F.3d 145,152 (2nd Cir.2003)("As a matter of

professional responsibility, an attorney owes a duty of loyalty to his client. This duty

encompasses an obligation **to defer to the client's wishes on major litigation**

**decisions**[4] (emphasis added)(citations omitted)

---

[4] In <u>Baldayaque</u>, the court vacated the district court's ruling 9dismissing the Section 2255
motion as untimely) and remanded the case for the district court to consider whether the
Petitioner was entitled to equitable tolling where the attorney malfeasance consisted of
counsel's failure to file a timely Section 2255 after being paid and instructed to do so by
the Petitioner.

Thus even if the record in this instance reflects that the ineffective assistance of trial counsel claim does not "relate back" to any of the timely filed claims for purposes of satisfying the one –year limitations, as it relates to Rule 15(c) of the federal Rules of Civil Procedure, the district court nevertheless properly exercised its discretion in tolling the limitations period and allowing Petitioner to file the ineffective assistance of trial counsel claim because the record dictates that the error was a direct result of an extraordinary act of attorney malfeasance.

---

III.    **The Fifth Amendment implications of <u>Booker</u> warrant retroactive application.**

The Government has cited a myriad of cases which all stand for the proposition that the Supreme Court's decision in <u>Booker</u> does not apply retroactive to cases on collateral review.

The courts that have examined the retroactivity of <u>Booker</u> have all focused the gist of its inquiry on the Remedial Opinion of Justice Breyer and correctly concluded that it announced a new rule of procedure which need not be applied retroactively to cases which have become final before the new rule was announced. See <u>Teague v. Lane</u>, 489 U.S. 288,310(1989). These courts have repeatedly explained that the Supreme Court's decision in <u>Schriro v. Summerlin</u>, 124 S.Ct. 2519 (2004) strongly implies that <u>Booker</u> should not be applied retroactively. While this observation is indeed partly correct, it would be error to concluded- as most courts have- that <u>Booker</u> is not retroactive because of <u>Schriro</u>. In fact at least one district court has recognized this fact. See <u>United States v. Siegelbaum</u>, 359 F.Supp.2d 1104,1107 (D.Ore.2005)

("The government asserts that retroactive application of [Booker] is foreclosed by

Schriro. **That is only partly true"**)(emphasis added).

None of the courts that have held that Remedial Booker does not apply retroactive

have assessed the retroactivity of the Substantive Majority Opinion of Justice Stevens.

The Substantive Majority Opinion of Booker, while focused on the Sixth Amendment

jury trial protections, also implicated the Due Process protections of the Fifth

Amendment. See Sullivan v. Louisiana, 508 U.S. 275, 278, 282-83 (1993) (discussing

the correlation between the Fifth and Sixth Amendments). The Substantive Majority

Opinion of Booker explained that under the mandatory Guidelines what had been

previously understood as sentencing factors, were in fact the functional equivalent of

offense defining elements of the U.S. Code. The Court was careful to note that by

denominating these sentencing factors as elements the Judicial Branch, visa, the

Substantive Majority Opinion, had not violated the Separation of Powers by exercising

a duty reserved for the Legislative Branch.

> Finally, the Government and to a lesser extent. Justice Breyer's dissent, argue that
> any holding that would require Guidelines sentencing factors to be proved to a
> jury beyond a reasonable doubt would effectively transform them into cool
> defining elements of criminal offenses. The result, according to the Government,
> would be an unconstitutional grant to the Sentencing Commission of the
> inherently legislative power to define criminal elements.
>
> There is no merit to this argument because the Commission's authority to identify
> the facts relevant to sentencing decisions and to determine the impact of such
> facts on Federal sentences is precisely the same whether one labels such facts
> "sentencing factors" or "elements" of crimes.
> *      *      *      *      *      *      *      *      *      *      *
>
> Contrary to the dissent's suggestion, the constitutional proposition that drives our
> concern in no way call[s] into question the principle that the definition of the
> elements of a criminal offense is entrusted to the legislature.
> Id. 543 U.S. @ 241-42 (citations omitted)

The Court underscored this rationalization by acknowledging that under the mandatory Guidelines the defendant in <u>Booker</u>      had in fact been **convicted of two separate crimes**. See <u>Booker</u>, 543 U.S. @ 272 (Stevens, J. dissenting) (comparing the jury's factual finding of 92.5 grams of cocaine base to the judge's finding, under a lower standard of proof, of 556 grams of cocaine base and nothing that "the two facts, which in this case, **actually established two separate crimes,** had both been found by a jury, the judicial fact-finding that produced the actual sentence would not have violated the Constitution.") (emphasis added).

By denominating the sentencing factors as the functional equivalent of elements of the offense, the Substantive Majority Opinion indisputably implied that Due Process required that the sentencing factors be found beyond a reasonable doubt as opposed to the preponderance of the evidence standard.

> The commentary to § 6A13.3 states that the Commission believes that use of a preponderance of the evidence standard [satisfies Due Process]. The court's holding today [in the Substantive Majority Opinion corrects this mistaken belief. The Fifth Amendment requires proof beyond a reasonable doubt, not by a preponderance of the evidence of any fact that increases the sentence beyond what could have been lawfully imposed on the basis of facts found by the jury or admitted by the defendant.
> Id. 543 U.S. @ 319 n.6 (Thomas J., dissenting in part)

In the field of criminal procedure, when a standard of proof has been rejected because it created an impermissibly high risk of erroneous commitment, the new standard has been applied retroactively to afford defendants committed under the old standard review under the current standards. See <u>Brown v. Louisiana</u>, 447 U.S. 323,328 (1980). Petitioner's right to Due Process requires adjudication under the appropriate standard of proof. "Due process commands that no man shall lose his liberty unless the Government has borne its burden of…convincing the fact finder of his guilt. To this

end, the reasonable doubt standard is indispensable, for it impresses on the trier of fact necessity of reaching a subjective state of certitude of the facts in issue." See <u>Reed v. Ross</u>, 468 U.S. 1,5 (1984).

In its recent decision in Re Fashina, 486 F.3d 1300 (D.C. Cir.2007) the D.C. Circuit addressed a similar question and reached the conclusion that any Fifth Amendment implications which may have been implicated by the Substantive Majority Opinion of <u>Booker</u>, i.e., that all facts relevant to sentencing must be proven beyond a reasonable doubt, were necessarily extinguished by the Remedial Majority Opinion. Id. 486 F.3d @ 1406.

However, even post-<u>Booker</u> several courts have recognized that even if the Sixth Amendment's jury trial guarantee is not directly implicated because the Guidelines are purely advisory, the Fifth Amendment's Due Process requirement is. See e.g. <u>United States v. Kandarakis</u>, 441 F.Supp. 2d 282, 325-29 (D.Mass.2006) (nothing that post-<u>Booker</u>, even if the reasonable doubt standard is not specifically required by Due Process, it is at least permitted): <u>United States v. Pimetal</u>, 367 F.Supp 2d 143,150-51,154 (D.Mass.2005) (finding the Fifth Amendment requires application of the beyond a reasonable doubt standard to enhancements because each judicial finding of fact has "quantifiable consequences" on the defendant's sentence); <u>United States v. Huerta-Rodriguez</u>. 355 F. Supp.2d 1019,1027 (D.Neb.2005)("[T]his court will require that a defendant is afforded procedural protections under the Fifth and Sixth Amendment's in connection with any facts on which the Government seeks to rely to increase a defendant's sentence."); United States v. Leroy, 373 F.Supp.2d 887,889 n.2 (E.D.Wis.2005)("Despite the applicability of a preponderance standard to guideline

determinations, judges **should still** require a high degree of confidence in **any finding that increases the sentence**. As Judge Goodwin noted in United States v. Gray, 362 f.Supp.2d 714,723 (S.D.W. Va.2005), in determining what weight to give the advisory guidelines, it may be helpful for the court to consider whether any guideline enhancement are supported by evidence beyond a reasonable doubt. **This is not a back-door means of adopting the position of the remedial dissenters in Booker. Rather, is allows the court to give effect to both the merits and remedial majority opinions")** (emphasis added). The logic of these cases have been buttressed by Justice Scalia's concurring opinions in Rita v. United States, 168 L.Ed.2d 203 (2007), Gall v. United States, 169 L.Ed.2d 445 (2007) and Kimbrough v. United States, 169 L.Ed.2d 481 (2007) where he has continually emphasized that "[t]he door remains open for a defendant to demonstrate that his sentence…would not have been upheld but for the existence of a fact found by sentencing judge and not the jury [beyond a reasonable doubt]. "Id. 169 L.Ed.2d @ 463.

Due to the fundamental importance of the reasonable doubt standard, as explained by In Re Winship , 397 U.S. (1970) and the concrete substance it provides for the presumption of innocence, Id. @ 363, and accuracy in the criminal context, see Schriro, 124 S.Ct. @ 2523, the district court should re consider its previous ruling that Booker is not retroactively applicable to a case on collateral review.

## CONCLUSION

The facts and records of the present case demonstrate that Petitioner was denied a fair trial as a result of the constitutionally ineffectiveness of trial counsel's investigation (and representation); Petitioner is entitled to 'equitable tolling' as a result of Mr. Jones'

inadvertent omission of the ineffective assistance of trial counsel claim from the timely

filed Section 2255 motion; and <u>Booker</u> should be retroactively applied to Petitioner's

sentence.

      **WHEREFORE**, for all of foregoing reasons This Honorable Court should

reverse the conviction (and order a new trial) or vacate the sentence and provide any

other such relief deemed just and equitable under the circumstances.


                            Respectfully submitted,


                                    /s/

                            Antoini M. Jones
                            D.C. Bar No. 428159
                            6811 Kenilworth Avenue
                            Suite 210
                            Riverdale, Maryland 20737
                            (301) 277-0770


## CERTIFICATE OF SERVICE


      I hereby certify that a copy of the foregoing to be served by electronic transmission via the United States District Court's Electronic Case Filing system on counsel for the Government, Sherri Berthrong, Esquire, on this 24th day of July 2008.


                                  /s/

                            Antoini M. Jones